FILED

JUL 27 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INDICTMENT |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:22 CR 415 |
| v. ) | |
| ) | Title 18, United States Code, |
| OSI MOKWUNYE, ) | Sections 1028A, 1341, 1343, and |
| ) | 1349 |
| Defendant. ) | |

JUDGE RUIZ

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Defendant OSI MOKWUNYE was a resident of Cleveland, Ohio, in the Northern District of Ohio.

2. Bank 1 was a federally insured financial institution headquartered in Charlotte, North Carolina. Bank 1 had branch offices and Automated Teller Machines ("ATMs") located in the Northern District of Ohio. Bank 1's servers were located in the State of Texas.

3. F.Y. was an individual residing in the Central District of Tennessee.

4. M.F. was an individual residing in the Central District of Tennessee.

5. H.B. was an individual residing in the Western District of Texas.

6. C.L. was an individual residing in the Western District of Texas.

7. M.H. was an individual residing in the Western District of Washington.

8. The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system. The UI system provided temporary financial assistance to eligible lawful workers who were unemployed through no fault of their own. The purpose of the UI system was twofold: to lessen the effects of unemployment through direct cash payments to laid-

off workers; and to ensure that life necessities were met weekly while the worker sought employment.

9. State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state. SWAs administered UI programs in accordance with federal laws and regulations. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period. When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds. In California, the SWA was the Employment Development Department ("EDD").

10. Because of the Coronavirus Disease 2019 ("COVID-19"), EDD's ability to provide UI benefits was expanded. On or about March 13, 2020, the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia, pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207. On or about March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA"). The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law. The CARES Act expanded EDD's ability to provide UI for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits. The CARES Act provided for new programs: Pandemic Unemployment Assistance ("PUA");

Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"), among others (collectively, "Pandemic UI").

11. PUA provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise would not qualify for regular or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage included individuals who exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker qualified for PUA benefits administered by EDD if the individual previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason. The eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

12. FPUC provided individuals who were collecting regular UI, PEUC, and PUA with an additional $600 per week from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

13. PEUC provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law; had no rights to regular UI under any other state or federal law; were not receiving UI under the UI laws of Canada; and were able to work, available for work, and actively seeking work. EDD had to offer flexibility in meeting the actively seeking work requirement if individuals were unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC was from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

3

14. To obtain Pandemic UI, an individual could apply online through the EDD website, the servers for which were located in the State of California. Claimants answered various questions to establish their eligibility. Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth (collectively, "personal identification information"). Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed. Claimants could also submit several documents as evidence of their income.

15. EDD used Bank 1 to administer Pandemic UI benefits. If EDD approved the claimant's application, Bank 1 mailed a preloaded debit card to the claimant at the mailing address identified by the claimant in the application. Bank 1 thereafter loaded additional benefits on the claimant's card at certain intervals.

COUNT 1
(Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

16. The factual allegations contained in Paragraphs 1 through 15 are re-alleged and incorporated as though fully set forth herein.

17. From on or about July 11, 2020, through on or about November 9, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant OSI MOKWUNYE did knowingly and intentionally combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit federal offenses, that is, to devise and intend to devise a scheme and artifice to defraud the United States Department of Labor, EDD, and other state SWAs, and to obtain money and property from United States Department of Labor, EDD, and other state SWAs by means of false and fraudulent pretenses, representations and promises,

4

and for the purpose of executing and attempting to execute the scheme and artifice to defraud:

    a.    placed, and caused to be placed, in any depository for mail matter, any matter and thing to be sent and delivered by the Postal Service, and took and received from the Postal Service, any such matter and thing delivered by the Postal Service, in violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

    b.    caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

## OBJECTS OF THE CONSPIRACY

18.    The objects of the conspiracy were to: (1) induce DOL, EDD, and other state SWAs to issue Pandemic UI benefits to the conspirators to which they were not entitled; (2) use materially false statements and omissions to defraud DOL, EDD, and other state SWAs; (3) prevent detection of the conspiracy; and (4) enrich the Defendant and others.

## MANNER AND MEANS OF THE CONSPIRACY

19.    It was part of the conspiracy that:

    a.    Defendant and his coconspirators submitted and caused the submission of applications for Pandemic UI benefits to EDD and other state SWAs.

    b.    Defendant and his coconspirators knowingly made and caused to be made materially false statements and omissions on the Pandemic UI benefits applications to EDD and other state SWAs to appear eligible to receive Pandemic UI benefits, including false statements regarding employment history, residency and other information.

    c.    As a result of Defendant and his coconspirators' false and fraudulent Pandemic UI benefits applications, Defendant and his coconspirators caused EDD and

other state SWAs to approve Defendant's and his coconspirators' applications for Pandemic UI benefits.

  d. As a result of Defendant and his coconspirators' false and fraudulent Pandemic UI benefits applications, Defendant and his coconspirators received Pandemic UI benefits from EDD and other state SWAs via mail in the form of preloaded, Bank 1-issued debit cards that he was not qualified or authorized to receive. The Pandemic UI benefits associated with the fraudulently-obtained debit cards mailed to Defendant's address exceeded $400,000.00.

  e. Upon receiving the Bank 1-issued debit cards in the mail as a result of Defendant and his coconspirators' false and fraudulent Pandemic UI benefits applications, Defendant made cash withdrawals via Bank 1 ATMs at multiple locations in the Northern District of Ohio, thereby obtaining Pandemic UI benefits that he was not qualified or authorized to receive.

ACTS IN FURTHERANCE OF THE CONSPIRACY

20. In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed the following acts in furtherance, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

 A. F.Y. Application

21. On or about July 12, 2020, an electronic application for Pandemic UI benefits in the name of F.Y. was submitted to EDD, listing the mailing address for the debit card as MOKWUNYE's address in Cleveland, Ohio.

22. F.Y. did not submit the application and did not reside in Cleveland, Ohio.

23. On or about July 15, 2020, Bank 1 sent, via regular U.S. mail, to MOKWUNYE's address in Cleveland, Ohio, a Bank 1-issued debit card in the name of F.Y., which was pre-loaded with Pandemic UI benefits in the approximate amount of $16,500.00.

24. On or about July 22, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Lakewood, Ohio, using the Bank 1-issued debit card in the name of F.Y.

B. M.F. Application

25. On or about July 12, 2020, an electronic application for Pandemic UI benefits in the name of M.F. was submitted to EDD, listing the mailing address for the debit card as MOKWUNYE's address in Cleveland, Ohio.

26. M.F. did not submit the application and did not reside in Cleveland, Ohio.

27. On or about July 16, 2020, Bank 1 sent, via regular U.S. mail, to MOKWUNYE's address in Cleveland, Ohio, a Bank 1-issued debit card in the name of M.F., which was pre-loaded with Pandemic UI benefits in the approximate amount of $16,500.00.

28. On or about July 29, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Parma, Ohio, using the Bank 1-issued debit card in the name of M.F.

29. On or about August 4, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of M.F.

30. On or about August 5, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of M.F.

C. H.B. Application

31. On or about July 17, 2020, an electronic application for Pandemic UI benefits in the name of H.B. was submitted to EDD, listing the mailing address for the debit card as MOKWUNYE's address in Cleveland, Ohio.

32. H.B. did not submit the application and did not reside in Cleveland, Ohio.

33. On or about July 19, 2020, Bank 1 sent, via regular U.S. mail, to MOKWUNYE's address in Cleveland, Ohio, a Bank 1-issued debit card in the name of H.B., which was pre-loaded with Pandemic UI benefits in the approximate amount of $11,406.00.

34. On or about July 29, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Parma, Ohio, using the Bank 1-issued debit card in the name of H.B.

35. On or about August 4, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of H.B.

36. On or about August 5, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of H.B.

  D. C.L. Application

37. On or about July 17, 2020, an electronic application for Pandemic UI benefits in the name of C.L. was submitted to EDD, listing the mailing address for the debit card as MOKWUNYE's address in Cleveland, Ohio.

38. C.L. did not submit the application and did not reside in Cleveland, Ohio.

39. On or about July 19, 2020, Bank 1 sent, via regular U.S. mail, to MOKWUNYE's address in Cleveland, Ohio, a Bank 1-issued debit card in the name of C.L., which was pre-loaded with Pandemic UI benefits in the approximate amount of $11,406.00.

40. On or about July 29, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Parma, Ohio, using the Bank 1-issued debit card in the name of C.L.

41. On or about August 4, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of C.L.

  E. M.H. Application

42. On or about July 20, 2020, an electronic application for Pandemic UI benefits in the name of M.H. was submitted to EDD, listing the mailing address for the debit card as MOKWUNYE's address in Cleveland, Ohio.

43. M.H. did not submit the application and did not reside in Cleveland, Ohio.

44. On or about July 24, 2020, Bank 1 sent, via regular U.S. mail, to MOKWUNYE's address in Cleveland, Ohio, a Bank 1-issued debit card in the name of M.H., which was pre-loaded with Pandemic UI benefits in the approximate amount of $20,400.00.

45. On or about August 18, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of M.H.

46. On or about November 9, 2020, MOKWUNYE withdrew $1,000.00 from a Bank 1 ATM located in Cleveland, Ohio, using the Bank 1-issued debit card in the name of M.H.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-6
(Mail Fraud, 18 U.S.C. § 1341)

The Grand Jury further charges:

47. The factual allegations contained in Paragraphs 1 through 15 and 17 through 46 are re-alleged and incorporated as though fully set forth herein.

48. From in or around July 11, 2020 through in or around November 9, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant OSI MOKWUNYE and others, both known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the United States Department of Labor, EDD, and other state SWAs to obtain money from the United States Department of Labor, EDD, and other state SWAs by materially false and fraudulent pretenses, representations, and promises.

49. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant OSI MOKWUNYE and others, both known and unknown to

the Grand Jury, having devised and intended to devise any scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, placed, and caused to be placed, in any depository for mail matter, and matter and thing to be sent and delivered by the Postal Service, and took and received from the Postal Service, any such matter and thing delivered by the Postal Service, including the following mailings, each representing a separate count of this Indictment:

| Count | Date | Description of Mailing | Method | Sender | Recipient Location |
|---|---|---|---|---|---|
| 2 | July 15, 2020 | Debit card in the name of F.Y. | USPS | Bank 1 | Cleveland, Ohio |
| 3 | July 16, 2020 | Debit card in the name of M.F. | USPS | Bank 1 | Cleveland, Ohio |
| 4 | July 19, 2020 | Debit card in the name of H.B. | USPS | Bank 1 | Cleveland, Ohio |
| 5 | July 19, 2020 | Debit card in the name of C.L. | USPS | Bank 1 | Cleveland, Ohio |
| 6 | July 24, 2020 | Debit card in the name of M.H. | USPS | Bank 1 | Cleveland, Ohio |

All in violation of Title 18, United States Code, Section 1341.

COUNTS 7-11
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

50. The factual allegations contained in paragraphs 1 through 15 and 17 through 46 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

51. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant OSI MOKWUNYE and others, both known and unknown to

the Grand Jury, knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

52. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant OSI MOKWUNYE, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted, writings, signs, signals, pictures, and sounds by means of wire and radio communication, in interstate commerce, to wit: electronic communications and electronic transfers of funds which Defendant and others caused to be sent to, and received, as described below, each wire communication or transfer of funds constituting a separate count of this Indictment:

| Count | Approximate Date | Name on Debit Card | ATM Location | SWA Office |
|---|---|---|---|---|
| 7 | 7/22/20 | F.Y. | Lakewood, OH | California |
| 8 | 8/5/20 | M.F. | Cleveland, OH | California |
| 9 | 7/29/20 | H.B. | Parma, OH | California |
| 10 | 8/4/20 | C.L. | Cleveland, OH | California |
| 11 | 11/9/20 | M.H. | Cleveland, OH | California |

All in violation of the Title 18, United States Code, Section 1343.

COUNTS 12-16
(Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

53. The factual allegations contained in paragraphs 1 through 15, 17 through 46, and 51 through 52 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

54. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, Defendant OSI MOKWUNYE and others, both known and unknown to the Grand Jury, did knowingly transfer, possess, and use, a means of identification of another person, without lawful authority, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349, and Wire Fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, each transfer, possession, or use constituting a separate count of this Indictment:

| Count | Approximate Date | Means of Identification | SWA Office | Transaction location |
|---|---|---|---|---|
| 12 | 7/22/20 | Debit card in the name of F.Y. | California | Lakewood, OH |
| 13 | 8/5/20 | Debit card in the name of M.F. | California | Cleveland, OH |
| 14 | 7/29/20 | Debit card in the name of H.B. | California | Parma, OH |
| 15 | 8/4/20 | Debit card in the name of C.L. | California | Cleveland, OH |
| 16 | 11/9/20 | Debit card in the name of M.H. | California | Cleveland, OH |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.